UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ARTHUR WOODSON, | Case No. 15-CV-1216 (PAM/TNL) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| DENESE WILSON, Warden, | |
| Respondent. | |

Petitioner Arthur Woodson, a prisoner at the Federal Correctional Institution in Sandstone, Minnesota, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. In his habeas petition, Woodson challenges the validity of a federal conviction and sentence incurred in Wisconsin. This Court, however, lacks jurisdiction to consider Woodson's habeas petition as his challenge should have been brought in a motion under 28 U.S.C. § 2255 in the district of conviction. Accordingly, this Court recommends that Woodson's habeas petition be summarily dismissed without prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

### I. BACKGROUND

On January 19, 2011, Woodson was indicted in the United States District Court for the District of Wisconsin on one count of knowingly and intentionally distributing a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See*

---

[1]Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Although Woodson seeks relief under § 2241, the Rules Governing Section 2254 Cases nevertheless apply here. *See* Rule 1(b).

*United States v. Woodson*, No. 2:11-CR-0019-RTR (E.D. Wis. filed Jan. 19, 2011). Woodson pleaded guilty to that offense approximately one year later. *Id*.

Prior to sentencing, Woodson (acting pro se) argued that, given his criminal history and the characteristics of his offense, the United States Sentencing Guidelines recommended a sentencing range of 30-37 months for his offense. *Id*., Docket No. 34. Woodson's defense counsel, the government, and the sentencing court all agreed, however, that Woodson was subject to the Sentencing Guidelines' career-offender enhancement, which applies in cases where

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Due to the application of the career-offender enhancement, Woodson's recommended sentencing range under the Guidelines increased from 30-37 months to 151-188 months. On May 30, 2012, Woodson was sentenced to a 160-month term of imprisonment for his offense.

On direct appeal, Woodson challenged the district court's application of the career-offender enhancement, arguing that he had not been convicted of "at least two prior felony convictions of either a crime of violence or a controlled substance offense" as required by § 4B1.1(a). Specifically, Woodson argued that a prior conviction he incurred for battery under Wis. Stat. § 940.19(1) could not be counted as a prior felony conviction, because the offense was classified as a misdemeanor under Wisconsin law and ordinarily carried a sentence of nine months of imprisonment or less. *See* Wis. Stat. § 939.51(a). The Seventh Circuit Court of

Appeals rejected Woodson's argument, noting that Woodson's potential term of imprisonment for the battery conviction was enhanced under Wisconsin's habitual criminality statute due to another battery conviction which had occurred prior to the conviction at issue, thereby converting the conviction at issue from a misdemeanor into a felony for purposes of the career-offender enhancement in the Sentencing Guidelines. *See United States v. Woodson*, 513 Fed. App'x 616, 618 (7th Cir. 2013) (per curiam). The career-offender enhancement was thus found to apply, and Woodson's appeal was dismissed.

In February 2014, Woodson filed a motion to vacate, set aside, or correct his sentence in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 2255, arguing that his trial counsel provided ineffective assistance by failing to procure the plea colloquy for the disputed battery conviction and by failing to object to the application of the career-offender enhancement. *See Woodson v. United States*, No. 2:14-CV-0189 (E.D. Wis. filed Feb. 20, 2014). The district court denied Woodson's motion and declined to issue a certificate of appealability. *Id*.

Woodson raises two claims for relief in his petition for habeas relief before this Court. First, citing *Descamps v. United States*, 133 S. Ct. 2276 (2013), Woodson renews his argument that his prior conviction for battery was not a predicate offense for purposes of the Sentencing Guidelines' career-offender enhancement, and he contends that his sentence is unlawful on account of the district court's application of the enhancement. Second, citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Woodson argues that any factual finding that he was a career offender under the Sentencing Guidelines should have been made by a jury, and not by the sentencing court.

## II. ANALYSIS

Woodson faces two insuperable barriers to habeas relief — one procedural, the other substantive. First, this Court lacks jurisdiction to grant the relief sought by Woodson, as the arguments raised in his petition should have been brought in a motion for relief under § 2255 in the district of conviction. Second, Woodson's arguments are wholly meritless.

### A. Savings Clause

"A federal inmate generally must challenge a conviction or sentence through a § 2255 motion." *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010) (citation omitted). Therefore, "[i]t is well settled a collateral challenge to a federal conviction or sentence must generally be raised in a motion to vacate filed in the sentencing court under § 2255 . . . and not in a habeas petition filed in the court of incarceration . . . under § 2241." *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003). Federal district courts lack jurisdiction to hear a federal prisoner's collateral challenge to his original conviction or sentence brought in a habeas petition unless the prisoner demonstrates that the remedy provided by § 2255 is inadequate or ineffective to test the legality of his detention. *See* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus [on] behalf of a [federal] prisoner . . . shall not be entertained . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986) (per curiam). The "inadequate or ineffective remedy" exception is sometimes called the "savings clause," see *Abdullah v. Hedrick*,

392 F.3d 957, 959 (8th Cir. 2004), because, when it applies, it can "save" a habeas petition from being dismissed under the § 2255(e) exclusive-remedy rule.[2]

Woodson acknowledges that he is challenging the validity of his conviction and sentence. See ECF No. 3 at 1-4. He also acknowledges that, generally speaking, such a challenge must be raised through a motion brought under § 2255 under the exclusive-remedy rule. *Id.* Nevertheless, Woodson argues that § 2255 is inadequate or ineffective in this case, and he urges that this Court consider the merits of his habeas petition.

The Supreme Court has not adopted a specific test for when a prisoner may invoke the savings clause, but several circuit courts have established such tests. Those tests almost always require that, where a petitioner seeks to invoke the savings clause, the petitioner must show (among other things) that he seeks to apply (1) a new rule of law that (2) has been found to apply retroactively. *See, e.g.*, *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1274 (11th Cir. 2013) (requiring that the petitioner establish that "the new rule . . . applies retroactively on collateral review . . . ."); *Reyes-Requena v. United States*, 243 F.3d 893, 903 (5th Cir. 2001) ("The standards that these courts have articulated for the savings clause may not be framed in identical terms, but the following basic features are evident in most formulations: actual

---

[2]If a petitioner failed to raise a claim in a prior § 2255 petition, he may not then present his claim under § 2241 in order to circumvent the limitations on second or successive § 2255 petitions. *See United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) ("It is well-established that inmates may not bypass the authorization requirement of 28 U.S.C. § 2244(b)(3) for filing a second or successive § 2254 or § 2255 action by purporting to invoke some other procedure."); *see also United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000) (citing *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998) ("[I]t can't be right and would nullify the AEDPA limitations if a prisoner, prevented from obtaining relief under § 2255, could simply turn to § 2241 . . . .")). As mentioned above, Woodson has already moved once for relief under § 2255.

innocence and retroactivity."); *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) (noting the "obvious" qualification that "the change of law has to have been made retroactive by the Supreme Court" for the savings clause to apply). Although the Eighth Circuit has not itself set forth a specific test as to when the savings clause should apply, it has indicated that § 2255 cannot be deemed inadequate or ineffective where the new rule from which the petitioner seeks to obtain relief does not apply retroactively. *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1062 (8th Cir. 2002). The Eighth Circuit has also made clear that "the Due Process Clause of our Constitution does not require that a petitioner have more than one unobstructed procedural opportunity to challenge his conviction." *Abdullah*, 392 F.3d at 963.

Woodson cannot avail himself of the savings clause for two reasons. First, despite his arguments to the contrary, Woodson is not seeking to apply any new rule of constitutional law made retroactive on collateral review. Woodson's first challenge — that his battery conviction was not a felony crime of violence for purposes of a career-offender enhancement — has been raised and re-raised since prior to sentencing. Although Woodson cites the relatively recent *Descamps* case in support of his argument that the enhancement was wrongly applied, it is doubtful that *Descamps* announced a new rule of law. *See United States v. Montes*, 570 Fed. App'x 830, 831 (10th Cir. 2014) (per curiam) ("[T]he *Descamps* decision did not recognize a new right. . . . The *Descamps* opinion simply applied existing doctrine."). For this reason, multiple courts have concluded that the Supreme Court did not make *Descamps* retroactive on collateral review. *See Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014); *Wilson v. Warden, FCC Coleman*, 581 Fed. App'x 750 (11th Cir. 2014) (per curiam); *Whittaker v. Chandler*, 574 Fed. App'x 448 (5th Cir. 2014) (per curiam); *Dunklin v. Wilson*, No. 13-CV-2411

(PJS/JSM), 2014 WL 5464250, at *5 (D. Minn. Oct. 27, 2014); *Snyder v. Wilson*, No. 14-CV-2047 (PAM/LIB), 2014 WL 3767845, at *5 (D. Minn. July 31, 2014). Woodson cited no authority for the proposition that *Descamps* applies retroactively, and this Court has discovered no such case. This Court follows suit with those courts that have considered *Descamps* in finding that it does not apply retroactively.

Woodson also contends that his sentence should be overturned due to the Supreme Court's *Alleyne* decision. But as with *Descamps*, the case suggests that *Alleyne* should not apply retroactively. "[N]either *Alleyne* itself nor any later Supreme Court decision holds that *Alleyne* is retroactive." *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014). There is abundant authority on which this Court can reasonably conclude that the Eighth Circuit would find that *Alleyne* is not retroactive, as *Alleyne* is explicitly an extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), see *Alleyne*, 133 S. Ct. at 2163, and "the Eighth Circuit has consistently held that *Apprendi* and its progeny are not rules of watershed magnitude and has declined to apply those cases retroactively." *Burton v. Fabian*, 612 F.3d 1003, 1010 n.4 (8th Cir. 2010). Further, each of the courts to have considered the specific question has found that *Alleyne* does not have retroactive effect. *See, e.g.*, *Butterworth v. United States*, 775 F.3d 459, 465-68 (1st Cir. 2015); *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Dunklin*, 2014 WL 5464250, at *4-5; *Willis v. United States*, No. 13-CV-2059 (JNE/JSM), 2014 WL 3384678, at *5 (D. Minn. July 10, 2014).

This Court agrees with the consensus on the question of retroactivity and finds that *Alleyne* does not apply retroactively unless the Supreme Court declares otherwise. Generally,

new rules of law are not retroactive on collateral review unless they fall within one of two narrow exceptions. The rule must either put certain "primary, private individual conduct beyond the power of criminal law-making to proscribe"; or, it must be a "watershed rule[] of criminal procedure." *Teague v. Lane*, 489 U.S. 288, 311 (1989) (quotation omitted). The rule announced in *Alleyne* does neither. *Alleyne* does not place the conduct for which Woodson was convicted outside the purview of the criminal law; Woodson's conduct remains just as unlawful today as it was when he was convicted and sentenced. *See* 21 U.S.C. § 841. Nor is *Alleyne* a watershed rule of criminal procedure. As explained above, it is merely an extension of the Supreme Court's previous holding in *Apprendi*. *See Simpson*, 721 F.3d at 876; *Willis*, 2014 WL 3384678, at *5 (collecting cases). Because *Alleyne* does not apply retroactively, that case cannot justify the invocation of the savings clause.

Apart from the non-retroactivity of *Descamps* and *Alleyne*, there is a second reason that Woodson cannot invoke the savings clause in this case: Woodson has already had one unobstructed procedural opportunity to raise the issues he hopes to raise in his habeas petition. Even if *Descamps* and *Alleyne* did announce new rules of law made retroactive on collateral review (as explained above, this Court concludes they did not), then Woodson could have cited the "new rules" purportedly created by those cases in his motion for relief under § 2255 in the Eastern District of Wisconsin. *Descamps* and *Alleyne* were both issued by the Supreme Court in June 2013. Woodson did not file his § 2255 motion until February 2014; indeed, his direct appeal (including the time allotted to petition the Supreme Court for review) did not conclude until after *Descamps* and *Alleyne* were decided. Accordingly, Woodson has already had "one unobstructed procedural opportunity" to cite the new rules supposedly created by *Descamps* and

*Alleyne*. *Abdullah*, 392 F.3d at 963.  Neither the Constitution nor the relevant post-conviction statutes entitle Woodson to a second bite at the apple.  *Id*.

For those reasons, the savings clause fails to save Woodson's habeas petition.  This Court therefore lacks jurisdiction over Woodson's habeas petition pursuant to the exclusive-remedy rule.  *See DeSimone*, 805 F.2d at 323.  In such circumstances, a court may either dismiss a habeas petition without prejudice, or may transfer the petition to the appropriate court for consideration on the merits.  Because, as explained below, Woodson's arguments are without merit, this Court recommends dismissal of the petition without prejudice.

### B.  Merits

As touched upon above, Woodson raises two substantive grounds for relief in his habeas petition.  First, Woodson argues that the district court, and later the Seventh Circuit, took an incorrect approach in determining whether his prior battery conviction was a felony crime of violence for purposes of the Sentencing Guidelines' career-offender enhancement.  Woodson contends that, had those courts followed the rule set forth in *Descamps*, they would have come to a different conclusion as to whether his earlier conviction was for a felony crime of violence, and he would have been subject to a much lower recommended sentencing range under the Guidelines.  This Court disagrees.

*Descamps* concerned the interpretation of the Armed Career Criminal Act ("ACCA"), which increases the sentences of certain federal defendants who have three prior convictions "'for a violent felony,' including 'burglary, arson, or extortion.'"  *Descamps*, 133 S. Ct. at 2281 (quoting 18 U.S.C. § 924(e)).  The Supreme Court summarized its holding in *Descamps* as follows:

> To determine whether a past conviction is for one of those crimes, courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime — i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.
>
> We have previously approved a variant of this method — labeled (not very inventively) the "modified categorical approach" — when a prior conviction is for violating a so-called "divisible statute." That kind of statute sets out one or more elements of the offense in the alternative — for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.
>
> This case [*Descamps*] presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an "indivisible" statute — i.e., one not containing alternative elements — that criminalizes a broader swath of conduct than the relevant generic offense. That would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test. Because that result would contravene our prior decisions and the principles underlying them, we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.

*Id*. at 2281-82.

Although *Descamps* concerned the application of the term "violent felony" in the ACCA, the term "crime of violence," as found in the career-offender enhancement, has been regarded as

interchangeable with "violent felony" as used in the ACCA. *See Roberts v. Holder*, 745 F.3d 928, 930 (8th Cir. 2014). Thus, *Descamps* has been found to have equal application to both the ACCA and the career-offender enhancement. *See, e.g.*, *United States v. Covington*, 738 F.3d 759, 763 (6th Cir. 2014). In other words, the same approaches must be used in determining whether a crime constitutes a "violent felony" under the ACCA or a "crime of violence" under the Sentencing Guidelines.

Woodson argues that the finding that his Wisconsin battery conviction was a "crime of violence" for purposes of the career-offender enhancement violates *Descamps*. This is incorrect. The statute under which Woodson was convicted provides that "[w]hoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor." Wis. Stat. § 940.19(1). This statute is, in the parlance of *Descamps*, an "indivisible" statute; the offense consists of only one set of elements, not multiple sets of elements provided in the alternative. Because the statute is indivisible, a sentencing court may look only to the statutory elements of the offense, and not to charging documents, plea colloquies, or any other materials in determining whether the prior offense was a crime of violence. This is exactly the approach taken by the sentencing court and the Seventh Circuit in Woodson's case. *See Woodson*, 513 Fed. App'x at 618. Because one element of the battery offense for which Woodson was convicted was "'the use, attempted use, or threatened use of physical force against the person of another,'" it was found to be a crime of violence under the definition provided by the Sentencing Guidelines. *Id*. (quoting U.S.S.G. § 4B1.2(a)(1)). No further investigation of the factual circumstances of Woodson's conviction

was necessary — or, for that matter, permissible. Simply put, there has been no violation of *Descamps* in this case.

Woodson's second challenge to his sentence can be disposed of more quickly. The Supreme Court held in *Alleyne* that "that any fact that increases the *mandatory minimum* is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155 (emphasis added). The sentencing court's finding that Woodson had committed two prior crimes of violence and was thus subject to the career-offender enhancement did not increase Woodson's minimum sentence; indeed, Woodson's crime carried *no* mandatory minimum term of imprisonment, with or without the career-offender enhancement. *See* 21 U.S.C. § 841(b)(1)(C). The career-offender enhancement affected the recommended sentencing range under the Sentencing Guidelines, but it did not affect the statutory minimum (or maximum) for Woodson's crime.

Moreover, even if the application of the career-offender enhancement had increased Woodson's minimum sentence, "*Alleyne*'s statement that facts increasing a mandatory minimum sentence are elements to be submitted to the jury did not overrule the [Supreme] Court's prior holding in [*Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998)], that a prior conviction is not an element of an offense." *United States v. Rucker*, 545 Fed. App'x 567, 573 (8th Cir. 2013). Because a prior conviction is not an element of an offense, the fact of a prior conviction may be found by a judge and need not be submitted to a jury. *Id*. Accordingly, no violation of *Alleyne* occurred when the sentencing court found that Woodson had committed two prior felony crimes of violence without submitting the question to a jury, regardless of the effect of that finding.

In sum: The claims raised in Woodson's habeas petition are not properly before this Court, as they should have been raised in a motion for relief under § 2255. Because Woodson's claims are not meritorious in any event, this Court recommends that the petition be dismissed without prejudice, rather than transferred to a different venue for inevitable dismissal.

### III.  RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Petitioner Arthur Woodson's petition for a writ of habeas corpus [ECF No. 1] be DENIED WITHOUT PREJUDICE FOR LACK OF JURISDICTION.

2. This action be DISMISSED WITHOUT PREJUDICE.

3. Woodson's application to proceed *in forma pauperis* [ECF No. 2] be DENIED AS MOOT.

Dated: April 16, 2015                                s/ Tony N. Leung
                                                     Tony N. Leung
                                                     United States Magistrate Judge

### NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 16, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A district judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Eighth Circuit Court of Appeals.